v. Ms. Tizard? Yes. May it please the Court, Your Honor, Julie Tizard on behalf of Kendrick Alexander. Your Honor, we believe the record clearly demonstrates that Mr. Alexander was not only induced to participate in criminal activity, we also believe that the government failed to show predisposition prior to government contact. What is clear in this case is that the criminal intent started with the government. Everyone agrees that there were several conversations that took place before the August 5th phone call, but what we don't agree to is to what transpired during that time. Mr. Alexander maintains that the government agent approached him at the cage at a casino after he won $10,000 at the high-stakes table. This is a fact that's undisputed. After the initial conversation, the two began running into each other at the casino, having conversations about gambling. Mr. Alexander represented that the government's agent, that he was in the car business, and the government agent declined to tell Mr. Alexander what he did for a living. Also noteworthy is the fact that the government's agent gave Mr. Alexander an alias. Now, this is significant because the government agent, High Tran, was a pretty high-profile drug dealer at one point. So it's feasible to think that had he given him his actual name, he could have Googled him and learned who he was, and maybe the government's theory of the case or what was presented at trial might be plausible. But that didn't happen. He gave him an alias, so that was not possible. Knowing your story, and you're right to say there are different factual arguments, what entrapment was presented to the jury? And if I remember, your motion for acquittal didn't say we went on entrapment. So the way I look at this is what's preserved for us, other than plain error, is really the jury instruction error. Right. I would agree with that. I would agree with that. Okay. So then let's maybe turn to that. And your position is the extra sentence that the district court inserted at the government's request is inconsistent with the Supreme Court's Sherman decision. Yes. I do believe it's inconsistent with the Sherman decision. That's an old decision. Right. It's a Supreme Court decision, so they last forever until they tell us they don't. But what's the best circuit application of Sherman that would say this statement to the jury, that they may consider a prior conviction, is an error of law? I do not know the answer to that question, Your Honor, and I am sorry for that. I didn't find it either, but it goes on. I don't know the answer to that question. We have Sorrell, Sherman, Jacobson, and ultimately the decision is this is for the jury, and it's got to be will overborne, no predisposition. We're looking at the predisposition prong. And you're so you're so you're so you're so you're so you're so you're so you're  But, but the language here didn't say to the jury, you can consider his old conviction only, and then, boom, he's got predisposition, it said that can be a factor, and the jury, you can consider this old conviction only, and then, boom, he's got predisposition, it said that can be a factor, and the jury, you can consider this old conviction  it was motivated by empathy, why clearly, Mr. Alexander was motivated by self-interest. However, that set aside, I think what's, what's relevant and what's similar in the two cases is that they were both targeted by the government for a particular weakness. In Sherman, he had a problem, a prior substance abuse problem, was approached numerous times, three or four times, by the government agent, trying to get him to get him drugs, you know, playing on his empathy trying to get him to do that. In Alexander's case, he was targeted because he had a gambling problem. The government, HITRAN, the government's agent was trolling casinos looking for someone to try to not only work off his brother's sentence. But the jury heard all that. Well, but I think that it's improper to tell the court, I mean, the jury, that they could consider that issue because of the temporal nexus between the two. It was over a decade before. There's nothing else in this case. The defense counsel below say it's relevant, it's coming in? Defense counsel? I don't know. Maybe you were defense counsel. No, I wasn't defense counsel. The defense counsel in the record below said that prior is coming in, it's relevant. Now ---- Wait. That's not for purposes of predisposition. Mr. Allen. So if it's, if it's, if it's, if it's ---- I understand what you're saying, and I've actually had this conversation. I understand what you're saying with respect to that. There's a difference between it being in because the defense has to present evidence in order to put forth an entrapment defense. So Mr. ---- which means Mr. Alexander has to testify, which means it's in. Well, it just means the jury's got to be told how to consider that. Right. Did it come in as 609 impeachment? Did Alexander testify? I think it came in because he, it came in on, on the defense's direct because he testified. So it came in. But whether or not they could consider that as predisposition is really the issue. Okay? And the bottom line is there's no other evidence really here of predisposition. Mr. Alexander had been out of the game for over a decade. He was a legitimate businessman. Mr. Alexander ---- sorry, Your Honor. He wasn't a target of any investigation prior to being approached by the government. They hadn't identified him as doing anything. He wasn't doing anything. He was a legitimate businessman who had a gambling problem. Again, Hy-Tran, the government's agent, was out at the casino, based on his testimony, trolling for any person that he could find. That's what the government instructed him to do, go to the casino and troll for people. Okay? That's where the criminal element hangs out, go to the casino. He targets Mr. Alexander, one, because he knows he has the means, and two, he could see that he's a regular at the high-stakes table. He's losing thousands of dollars at a time, winning thousands of dollars at a time, and he clearly is not a very risk-averse person. And clearly, ultimately, the way this was presented to Mr. Alexander was a quick business deal. Okay? With respect to, okay, not only did he say finally, after approaching him three or four times, I have these oxycodones, it's the hottest thing on the market. When Mr. Alexander said, I don't have any way of moving this, he offered to boof the drugs for him, which brings me to the sentencing entrapment issue. I understand that you all are reluctant to acknowledge sentencing entrapment. But I will say that what sets this case apart from the other cases in this circuit is that very fact. Not only, I understand that merely, you know, increasing the amount that must be purchased by 400 percent and driving the price even further down may not be enough for you to recognize sentencing entrapment, but I will say that offering to move the drugs for the target or the person that you've targeted is outrageous and egregious government behavior. And based on that, Your Honor, with respect to the sentencing entrapment What circuit has you probably put in the brief? What circuit has recognized sentencing entrapment? I believe — I'm sure I did put it in my brief. I believe the Sixth Circuit has. Is that case in mind that you think we should follow? I was more looking at the jurisprudence out of your — We have a case. Stevens, I believe, is out of the Fifth Circuit. And in that case, you said, you know, looking at other cases, that, you know, in order for you to find it, you have to find outrageous government behavior. And I believe going that extra step in offering to actually move the drugs for him, since he had no client base for it, is that outrageous government behavior. So if this — I believe this is a case where you should actually find that, Your Honor. And the last issue that I want to deal with, Your Honor, is the Brady-Piccolio issue. I need water. With respect to this issue, Your Honor, there's — Can I — can you give me some water? Thank you, Judge. With respect to the Brady-Piccolio issue, Your Honor, there's an argument whether this is material. It's clearly material. Basically, what happened is Agent Abney, which is the lead task force agent that worked between the State and the Federal Government, executed search warrants on both of these, in the State and the Federal Government, in both of those cases. Okay? The Federal case was disposed of, I believe, the guy — he pled guilty on December — in December 2008. He was not charged in the State case until September 2009. He went back and forth to court until about July 2010. The case was open at the time he testified in this trial. The defense in this case became aware but couldn't actually find the case file. They could find the minutes that indicated that there was an open case but couldn't get the actual case file on it. Was the same conduct charged in the State case as in the dismissed Federal case? I believe it was, Your Honor. But that wouldn't prohibit them from pursuing the State case. This was all happening right before trial, and the district said, take another week, right? Didn't the district rule that? Right. Right. And they — and he ultimately ruled that it couldn't come in because, you know. And actually, no. What happened was at that point, the State represented that that was subsumed into the Federal case, because that's typically what happens. And Agent Abney sat there in court during that hearing and said nothing. Okay? He knew. While the prosecutor may not have known — I think her good or bad faith is irrelevant in this particular case. Agent Abney sat there in court during that hearing and he knew what was happening and said nothing. Just, you know, I've tried to read the briefs again and again. What did he know that wasn't disclosed? What's the meaning? He knew that there was a pending State court charge that was initiated after the Federal charge was disposed of. Okay. Against Trump. Against — yeah. The only witness they had in this trial. Okay? And ultimately, again, as the — as the government so aptly pointed out in their closing argument, this case comes down to whatever transpired prior to the initial recorded statement. Who you believe, Mr. Alexander or Mr. Tran. And the bottom line is because it comes down to that, this isn't cumulative. Maybe the underlying facts of what happened are cumulative, but the fact is it's still not a cumulative case.  the fact that Mr. Alexander said something hanging over his head prior to him testifying. Not only that, he did not tell the true version of what happened to the jury. Why do we know that? Because now before you we have the entire record, including the grand jury transcript. And what I will say is that Mr. Alexander said that Hytran approached him three or four times. On one of those times, he said that Hytran told him, I have a guy in California that can get anything. Agent Abney confirms that this happened in his grand jury testimony. Okay? So that tends to tell you that Mr. Alexander's version of what happened is actually plausible and actually happened. If we're looking at this as Giglio, you cited San Filippo and Tashman. Those are much more egregious cases, right? The witness gets immunity and the prosecutor denies it and then the prosecutor capitalizes on the denial. Again. Did Hytran ever deny the charges? He said he has no idea what happened with those charges. Right. So that's not like San Filippo and Tashman. I'm not saying it's not Giglio, but what's your Giglio case that's similar? I mean, I will say that there's nothing on the record that said he got immunity for it, but I could tell you that based on the timeline, again, he pled guilty on the Federal case in 2008, wasn't indicted on the other case in September 9th, 2009, and that's highly unusual. The case was continued. It was pending at the time he testified, and it was null prost or dismissed after he was done testifying. As part of discovery, they gave you his criminal history that included this pending State case. But it was represented to the – I wasn't trial counsel, but it was represented to trial counsel that it was subsumed into the Federal case. And I do believe that the prosecutor thought it was subsumed into the Federal case, because that's usually what happens. Okay? But the agent did not notify her that this other case was initiated afterwards. Okay? And the – Do you have any evidence it wasn't dismissed just because there had been the Federal prosecution, as opposed to no, it was dismissed because he testified in this trial and gave us the testimony we wanted? I don't have any evidence of that, but I think it's irrelevant and of no moment. The bottom line, it was pending at the time, and if you – But the judge wouldn't allow them to cross-examine him on it. So it didn't come in. The jury didn't hear that. But didn't – But that's a different issue than whether you knew there was a State charge. Well, they knew there was a – it's not the State charge and the substantive portions of the State charge that's at issue. It's the fact that there was a pending State charge that was initiated by the same agent, meaning he could be penalized by being prosecuted in the State court case if he didn't say something in accordance with what they wanted him to say during this trial. I don't think the record is very clear, and that's maybe more on the government. But if you say the version of trial was what's been subsumed into the Federal case, don't worry about that State charge, doesn't that give you ample notice that it is the same case, so the agent would be involved in – But it wasn't an accurate statement. That's the thing. That's what she believed. I'm asking you, how do you know it wasn't an accurate statement? Because the State charge was actually initiated after the Federal charge was disposed of. So if it was subsumed in it, like it typically happens, they're both open, Federal charge gets disposed of, they dismiss the State case. This did not happen. This wasn't initiated until a year after the Federal case had been disposed of. Yes. The trial judge in the middle of Tron's testimony said, okay, take him out and board him outside the presence of the jury. Let's get to the bottom of this. They did say, let's take him out, let's talk to him, and the judge decided not to let it in. Afterwards. But so there was full exploration. Right. Full exploration and allowing the jury to hear that he had a pending State charge hanging over his head at the time that he testified in this case. He clearly didn't tell the full set of facts. He clearly didn't articulate what happened in this case accurately. Okay? We know that because – So your argument on Peel, is it error in creeping out evidence that you thought was proven to be material, or is it that the government didn't disclose to anybody the evidence? It's that the government did not disclose that he had a pending State court case, okay, with the same agent. The same government agent was responsible for both cases, pending at the time he testified in this trial. I see that I'm done. Thank you. Mr. Crosswell. Good morning. Ryan Cross on behalf of the United States. And may it please the Court. I'd like to start, if I may, where the Defendant's counsel left off, and that was the Brady issue. And just to clarify a few things. First of all, that pending charge was provided as part of this criminal history by the government, and the Court can see that at 2409 to 2418 in the record. In what? What page? 2409 to 2418, Your Honor. And that's the criminal history that was provided, and it references the pending charge against Ty Tran and Ascension Parrish. Secondly, we know the defense counsel knew about this charge at trial because it came up in the in-counter hearing that Your Honor referenced, and the Court ultimately ruled it was inadmissible at 888 of the record. And the reason it did so was because the cooperator testified outside the presence of the jury and said he had no idea about the charge. And so the defense's whole theory as to why it was relevant, impeachment value, went out the window because he didn't even know about it. And the judge accepted Mr. Tran, the cooperator's version of the story, they didn't know about it. And that's at 886 to 88 of the record. So nothing that's the only thing that's changed. There was no representation given to him about this State charge getting dismissed if he cooperated or anything of that type? Your Honor, at 1855 of the record, the defense actually says we have no evidence that this has affected the Federal charge in any way. Now, the only thing that changed was after trial they said, well, we found out that Chris Abney was part of the search. But Federal agents and State detectives are often part of the same search. It doesn't show at all that he knew of any pending charge seven years later, nor does it show that he communicated that to High Tran, the cooperator. And High Tran told the judge he didn't know about it. So the defendant is asking you to reevaluate High Tran's credibility when he said, I didn't know of this pending State charge. What about the situation with the case pending against his wife and the dismissal of that? Was he aware of that and had any representations been made to him that his wife's case would be dismissed if he cooperated with the government? Your Honor, it's a bit unclear as to whether or not the defendant had that or not. Page three of the appellate brief, they said they did have it during that in-camera hearing during trial. At page 1680 of the record, the trial counsel said he didn't know about it. So that's not clear. But here's what we do know. We do know that the trial counsel knew that his wife was there during the search that took place on August 13th because he references her being there in 1855 of the record. So on that basis alone, they could have done what they've done after trial, which is simply went to the clerk's office and asked for the record. And you can see how easy it was for them to obtain the fact that she had a charge against her. At 1628 of the record, the defense put on evidence that basically they just went to Ascension Parish clerk's office and they found out there was a charge against her that was expunged, and then they got the full file from the DA's office at page 1640 of the record. So if they didn't have it, they could have obtained it through due diligence. But let's assume they didn't have it, Your Honor. The task force doing the Ascension Parish stuff and the Federal stuff? The same common Federal agent. That's correct. But, Your Honor, the — Does that mean anything they know is attributed to you? Well, I think that the fact that there's a task force and they did a search of the house and Ms. Tran was there, I think that the Federal government probably acknowledged that she initially was charged, maybe imputed to the government based on that knowledge. But the fact that it was ultimately dropped, that's outside the purview of the Federal government and certainly outside the purview of the special agent, Chris Hadley. He's not a State detective. He's a Federal detective. And the only evidence that the defense has submitted that the Federal government may have known is a letter from a State detective, William Reams, to a State prosecutor in 2009 saying, Mr. Tran is cooperating with the Federal government. Please drop these charges. But even if they did have it or if the government had it, it's completely immaterial, Your Honor, because it was null pros in 2009. The charge against his wife was null pros five years before the defendant even met this cooperator. So what's the relevance? Even assuming he did know about it, why would that have any impeachment value? Because there's no reason for him to cooperate with the government at that point. The charges are even dropped. There's nothing hanging over his wife. And with regard to the charge against him, you can see at 2497, 2498, excuse me, 2397 to 2398 of the record, a letter from the State prosecutor saying that the charges against Hy Tran himself in Central Paris had been prescribed by virtue of the fact that nothing had been done with the case in years. So by the time Hy Tran cooperated against this defendant, the charge against him was prescribed. It could not be brought to trial. And the charge against his wife had been null pros. It's completely immaterial. It was arguably in their possession. They haven't shown it was in their possession or that there was a failure to disclose or that it was in the possession of the government. So we think that this argument, this Brady claim, fails completely on materiality alone, but we're not even sure they get to the threshold of materiality or favorability or failure of the government to disclose because it appears they had this information where they could have obtained it through due diligence. I'd also like to address the sufficiency of the evidence argument that the counsel made. First of all, everyone does not agree that the cooperator was first approached or first approached the defendant. In fact, he testified to the opposite of this at 903 to 905 of the record. He said that he was approached by the defendant. In the grand jury and at trial, both? Your Honor, Hy Tran testified at trial. At trial by agent to Abney? Yes, Your Honor, but I mean, this is why we have rules against Searcy and why we demand that people with direct knowledge testify to the jury. Special agents often testify as to what they believe they know from the witnesses and apparently he got it wrong. But Hy Tran's testimony at trial was no, that the defendant approached him. But even if you accept the defendant's version of the facts, his entire defense is premised on the idea that because a cooperator approached him four times. You looked – I'm sorry to jump back. You looked at the grand jury? Do you think Abney did get it wrong or do you not remember? I believe, Your Honor, that Special Agent Abney's testimony at the grand jury was that Hy Tran first approached him. Hy Tran testified to the jury. Okay. So that's your memory. Okay. Yes, sir. I'm pretty sure. But I understand your argument, yeah. But again, Your Honor, I would submit to the Court that it really – even if you accepted the defendant's version of the facts, this is what he testified to at trial, that he negotiated the price, the $1,400 of the record, that he found drug dealers to sell the drugs to after he bought them from Hy Tran, 1403 or 1407, and that he asked Hy Tran about other drugs, including cocaine, marijuana, and codeine syrup at 1410 and 1412 of the record. The jury could have convicted him on that testimony alone, as well as the absence of any evidence that he was threatened or coerced or a vulnerability of his was prevailed upon. His only vulnerability was the fact that he liked selling drugs for money because all that was offered to him was an opportunity to do this. And even if you accept his version of the facts that Hy Tran helped him to find someone he could sell the drugs to, all that is is offering him an opportunity to profit from criminal behavior. That is the very definition of criminal predisposition. But if it's so strong, why risk it by changing the pattern instructions? Why – it's always risky for the government to do that. Well, Your Honor, I mean, the – we actually fought very hard against him receiving the entrapment instruction at all. He did receive it, and maybe at this point that's better for me. It is better, but why – I always thought if you're going to ask the trial court to deviate from the pattern instructions, you better have a case right on point saying that's Fifth Circuit law. What's your case that allows that sentence in which his intention was Sherman? Well, Your Honor, I think that the – I'm not sure I can cite to you a case that said that the jury instruction should have been changed based on that. Well, forget whether they can be changed or not, but what's just any authority out there that says you can tell a jury you can decide the predisposition based on the defendant's prior conviction? Well, Your Honor, Reyes and Manzella both stated in our brief, as well as Rule 405 of the Rules of Evidence, which says that if character is at issue, other acts can come in. So it was – Other – yeah. But how – well, then how do you – did those cases harmonize Sherman? Your Honor, to quote the district court judge, Sherman is a far cry from this case. That was a defendant who had a drug rehabilitation problem. The facts are extraordinary. Most entrapment facts are. Jacobson's were extraordinary. And you may be right, these facts aren't. But on the simple legal principle that a jury can't be told that they can decide predisposition because of one prior conviction, I would think Sherman still stands for that. I think – I mean, my interpretation of Sherman was that in this case, considering the conviction, previous conviction of that defendant wasn't appropriate because it was a drug-trafficking conviction for a defendant who was trying to defeat drug addiction. What we know here is that, A, it is a correct statement of law that the jury can consider criminal history in determining criminal predisposition. B, no one disputes the fact that this defendant – Okay. I'm sorry. How is A – what case says A works with Sherman? Or is Sherman, in your mind, not good law? I just don't – Your Honor – What is the legal principle you extract from Sherman? I did not take from Sherman a general proposition that a jury cannot be instructed on a criminal – a prior criminal conviction in considering predisposition. I guess that wasn't my interpretation of Sherman, Your Honor. My interpretation of Sherman was that in that scenario, predisposition, which was the only thing that apparently the jury based upon, wouldn't be appropriate based on the extraordinary facts. I didn't read it to mean that jury instruction can never reference the fact that a jury may include or consider someone's criminal history in determining whether or not he has criminal predisposition. So I think the instruction – Do you know of any other pattern? Instruction? Has the line the government persuaded the Court to add here? Any other circuit? Because, yeah, you – did you check? I'm not aware of it, Your Honor. I'd be happy to submit a 20-page – No, no, no. That's all right. If it were legal error? It's harmless, Your Honor. And the reason it's harmless is because of the overwhelming evidence of this defendant's criminal predisposition. And if I could just go through it real quickly. First, anything I cite with regard to sufficiency of the evidence or with regard to his predisposition can readily be found by this Court in pages 910 to 919 of the record, and 929, 938 of the record, and Recordings 2A and 3A. Just on those pages alone, you see and you hear the defendant talking about negotiating the price, finding other drug dealers, talking about how he wants to be the man behind the scenes. In other words, he wants to keep a low profile. 918 and 919 of the record, he talks about how he would like to pay the cooperator extra just for, quote, getting him in the mix. I think essentially paying him royalties. And then 929 and 933 of the record, you hear him talking about getting other drugs, the powder, which meant the cocaine, the weed, which meant the marijuana, and the syrup, which meant the coding syrup. So that goes to not only his criminal predisposition but his know-how. And you see his enthusiasm, too. And, again, anything that the defendant's arguments are almost entirely premised on you accepting the defendant's version of the facts and rejecting the government's. And, of course, that's not what this government's or the Court's in a position to do here. So I think that I've covered everything that I want to cover with regard to the sufficiency of the evidence and the Brady-Giglio issue. So I'm happy to answer any more questions from the Court. Otherwise, I'll just rest on my briefs and respectfully request that the Court confirm this conviction and sentence. Thank you. Ms. Zard. Your Honor, briefly. Hytran testified at trial that Mr. Alexander, not knowing he was a drug dealer, having been out of the drug business for over a decade, randomly walked up to him, asked him if he had oxycodone, for which he had no clientele for. I mean, it's not believable. Okay? And the bottom line is whatever he testified to at trial is not accurate. And why do we know that Mr. Alexander's rendition of events is more accurate? It's based on the lead agent's testimony at the grand jury. Okay? He corroborated at least one portion of Mr. Alexander's testimony, which is that, you know, at one point, and it was a question actually asked by the prosecutor that Mr. Abney, Detective Abney, was responding to. She said, you know, why would you have these conversations about, of oxycodone? Well, I told him at one point I could get him anything in California. You know, I told him I had a guy in California that could get anything. That supports Kendrick Alexander's version of the events. The jury didn't get to hear that. This is the grand jury? Yeah. Yeah. This is the grand jury. I looked at the grand jury. I mean, the government's seeming to agree with you. But it looked like the question was, can you give the grand jury a background about Mr. Alexander? Answer, Mr. Alexander approached a confidential informant that I currently utilize. So it's the opposite. Didn't Abney say your client approached the grand jury? But when he asked him why did that happen, okay, why did that happen, of course they're going to say he approached him. Why did that happen? Oh, because he told him he had a source in California that could get him anything.  That indicates that there were. Slow down. Because you were saying Abney said the opposite. But you're now admitting Abney did say in the grand jury that your client approached the C.I. The verb approach. One approached the other. But the question was. Did he later say the opposite happens? I don't require. I don't remember the actual word approached. But I remember that they had a conversation. And I remember that it, you know, when asked why that happened, it basically corroborated what Mr. Alexander's testimony was, that he had, he told him at some point that he had a source in California that could get anything. I mean, honestly, from a common sense point of view, forget everything else. From a common sense point of view, it makes no sense that somebody that's been out of the game for over a decade, that's a legitimate businessman, has a car dealership, is going to approach somebody he doesn't even know is a drug dealer, okay? What makes sense and what is supported by the entirety of the record, some of which the jury unfortunately didn't get to hear, is that Mr. Alexander was approached numerous times prior to getting involved. And it wasn't until he said, I have this thing, I got these, it's the hottest thing on the market. And then, you know, and they say, oh, he went to go talk to see if he could move the drugs. Clearly, in the August 12th reporting, he didn't have any way to move the drugs, which is why, you know, the confidential informant Hy-Tran went a step further and said, oh, I've got people in New Orleans that can move them for you. Like, don't worry. But they won't sound opportunistic, like your client had pretty darn good interest in all this happening? Well, you know what? I think at some point he did, and I'm not going to misstate that. But I think at that point he was already entrapped. I think the entrapment is what happened at the beginning, okay? Like I said, the criminal intent started with the government, not Mr. Alexander. Mr. Alexander had been out of the game for over a decade. Legitimate businessman, has a gambling problem. Hy-Tran, this is all we know at the time, is trying to work off a sentence that his brother has in federal court. I mean, in those recordings, he knows a lot about prices. How is that consistent with saying he hadn't been in the game? Well, they had, because as Hy-Tran, Hy-Tran did admit that they had conversations about pills and stuff outside the scope of the recorded conversations. However, he didn't specifically say how that went down. Mr. Alexander did. And a lot, some of, at least part of that testimony was corroborated by the agent in the grand jury testimony, okay? So with respect to that, I just don't think it's believable to think that after you've been out of the game for that long, you have no clientele to move this stuff. And you don't even know what's the hottest thing or whatever. You're going to go up to somebody and ask for something that you have no clientele for. I mean, it just doesn't make any sense from a logical point of view. Going back to the Brady issue, okay, the deal with the Brady issue, again, is this didn't happen like it typically happens when you're dealing with a case that's simultaneously going on in State court and Federal court. It wasn't initiated until almost a year after the Federal charges had been disposed of. Hy-Tran had been going back and forth to court on this. He knew this was going on, okay? Regardless of whether it had prescribed, it doesn't matter, because it was still pending. Nobody filed a motion to quash. It was still pending at the time that he testified, and he did not tell the whole story when he testified to the jury. And I think because this case comes down to who do you believe? Do you believe Kendrick Alexander, part of his testimony is corroborated by the lead case agent, or do you believe Hy-Tran's version of events? Subject to any questions, Your Honor? Thank you very much. That completes the Court's docket for this morning, and we will be in recess until 9 o'clock tomorrow.